NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE A. BEBERMAN,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF STATE MIKE POMPEO, in his official capacity,<br><br>Respondent. | Civ. No. 20-01<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

# INTRODUCTION

This matter comes before the Court upon the Motions for Summary Judgment filed by Respondent Secretary of State Mike Pompeo, in his official capacity ("Respondent") (ECF No. 12) and Petitioner Julie A. Beberman ("Petitioner") (ECF No. 18). The Court has decided the Motions based on the written submissions of the parties and without oral argument. For the reasons stated herein, Respondent's Motion for Summary Judgment (ECF No. 12) is granted, and Petitioner's Motion for Summary Judgment (ECF No. 18) is denied.

# BACKGROUND

## I.  Factual Background

Petitioner asks the Court to review two decisions issued by the Foreign Service

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

Grievance Board ("FSGB" or the "Board") arising from her past employment with the U.S. Department of State (the "Department"). (*See* Pet. ¶¶ 34–35, ECF No. 1.) Petitioner was employed by the Department as a Foreign Service member. (Resp't's Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 14.) In 2016, Petitioner was denied tenure and notified that she would be separated from the Foreign Service. (*Id.* ¶ 2.) At the time, Petitioner was assigned to Embassy Malabo in Equatorial Guinea. (*See* Pet. ¶ 13.)

Pursuant to Department regulations, Petitioner obtained temporary interim relief from separation while the FSGB considered several pending grievance appeals related to her employment and separation. (Resp't's SUMF ¶ 3.) Petitioner was ordered to return from Embassy Malabo to Washington, D.C. to "engage in meaningful work in the Bureau of African Affairs" until her interim relief status ended and her grievances were decided. (*Id.* ¶ 4.) Notwithstanding her temporary interim relief status, Petitioner received a Separation Order on March 31, 2016. (Pet'r's SUMF ¶ 3, ECF No. 21.)

Petitioner arrived in Washington on April 9, 2016. (Resp't's SUMF ¶ 6.) Pursuant to the Department's Standard Operating Procedure ("SOP"), Petitioner was not formally assigned to Washington and was not eligible for "locality pay, per diem, or the home service transfer allowance." (SOP D-01 (Revised Mar. 2014) at 27, Resp't's Ex. 2, ECF No. 14-2.)[2] Petitioner's Career Development Officer ("CDO") relayed this information to Petitioner. (Pet'r's SUMF ¶ 5.) Petitioner remained in Washington for months. (*Id.* ¶¶ 6–9.) Throughout, she voiced concerns regarding the status of her position there. (*Id.* ¶¶ 10–15.)

---

[2] The page numbers to which the Court refers when citing all Exhibits are the page numbers from the Record of Proceedings ("ROP") submitted by Respondent. (ECF Nos. 14-1 through 14-16.) The ROP constitutes the administrative record and includes all documents and submissions from Petitioner's agency-level grievance and her Grievance Appeal.

In October 2016, the Department approved a revision to SOP D-01. (*See* SOP D-01 (Revised July/Aug. 2016) at 56, Resp't's Ex. 2.) The revision allowed employees on interim relief to be officially assigned to Washington via a permanent change in station, and thus entitled to locality pay and other benefits. (Resp't's SUMF ¶ 7.) In accordance with the revision, the Department retroactively assigned Petitioner to Washington and paid her locality pay from April 2016 to November 2016. (*Id.* ¶ 8.)

## II.     Procedural History

### A.     *Administrative Proceedings*

On March 29, 2018, Petitioner filed a Department grievance arguing that she was entitled to per diem from April 9 to November 1, 2016, the days she worked in Washington before her assignment status was retroactively revised. (Agency-Level Grievance Submission at 10, Resp't's Ex. 2.) The Department denied her grievance. (Agency-Level Decision at 68, Resp't's Ex. 2.) Petitioner appealed to the FSGB (the "Grievance Appeal"). (Grievance Appeal Submission at 4, Resp't's Ex. 2.) After the Department filed their response to her Grievance Appeal, Petitioner sought discovery. (Req. to Conduct Disc. at 88, Resp't's Ex. 7, ECF No. 14-7.) The FSGB denied Petitioner's discovery request ("Discovery Order"). (Disc. Order at 107, Resp't's Ex. 10, ECF No 14-10.) About two months later, the FSGB denied Petitioner's Grievance Appeal ("Final Decision"). (Final Decision at 233, Resp't's Ex. 16, ECF No. 14-16.)

### B.     *Present Action*

On January 2, 2020, Petitioner filed a Petition for Review in this Court seeking review of the FSGB's decisions, pursuant to 22 U.S.C. § 4140. (ECF No. 1.) Petitioner requests that the Court reverse the FSGB's Discovery Order and remand to allow her to conduct discovery. (Pet. at 4.) Alternatively, she requests that the Court reverse the FSGB's Final Decision and find that

she is entitled to per diem. (*Id.*) On May 21, 2020, Respondent moved for summary judgment. (ECF No. 12.) Two months later, Petitioner filed a Cross-Motion for Summary Judgment (ECF No. 18) and an Opposition to Respondent's Motion for Summary Judgment (ECF No. 20). Respondent filed a Reply. (ECF No. 24.) Respondent's and Petitioner's Motions for Summary Judgment are presently before the Court.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

At the summary judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248–49. Similarly, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of

4

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

I.     **Judicial Review of FSGB Decisions**

District courts review final actions of the FSGB according to the standards set forth in the Administrative Procedure Act ("APA"). 22 U.S.C. § 4140(a). The APA commands the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When reviewing agency action under the arbitrary and capricious standard, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Nevertheless, the agency must reach its decision by examin[ing] the relevant data, and it must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *State Farm*, 463 U.S. at 43) (internal quotations omitted). The reviewing court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (citations omitted).

When reviewing an agency's interpretation of a statute, the reviewing court must determine first whether the statute is clear and second whether the agency's interpretation of an unclear statute is reasonable. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). However, a court defers to the agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." *N.J. Env't Fed'n v. U.S. Nuclear Regul. Comm'n*, 645 F.3d 220, 228 (3d Cir. 2011) (citation omitted).

## II. The FSGB's Discovery Order

Petitioner requests that the Court reverse the FSGB's Discovery Order and remand to allow her to conduct discovery. (Pet. at 4.) The Board found that Petitioner failed to show good cause to support her request because (1) she did not provide "any regulatory or statutory basis to support her claim of entitlement to take discovery at this point in the proceeding" (Disc. Order at 105), and (2) she did not establish that the subject matter of the proposed discovery was relevant to her grievance (*id.* at 105–07). Petitioner challenges the Discovery Order as "arbitrary and capricious, an abuse of discretion, and not in accordance with law." (Pet. ¶¶ 34, 36.) Respondent argues that the Discovery Order is "lawful, well-reasoned and supported by the Administrative Record." (Resp't's Br. at 5, ECF No. 13.)

Agency decisions regarding discovery are subject to judicial review. *Hi-Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 788 (D.C. Cir. 2000). Although there is limited case law on the subject, the United States Court of Appeals for the D.C. Circuit has held that agency discovery decisions are entitled to "extreme deference," *Port Auth. of N.Y. and N.J. v. Dep't of Transp.*, 479 F.3d 21, 37 (D.C. Cir. 2007) (citation omitted), and, if reasonable, should not be disturbed "barring the most extraordinary circumstances," *Trailways Lines, Inc. v. Interstate Com. Comm'n*, 766 F.2d 1537, 1546 (D.C. Cir. 1985).

Here, the FSGB's decision to deny discovery withstands scrutiny under either the "extreme deference" standard applied by the D.C. Circuit or the "arbitrary and capricious" standard outlined by the APA. The Board reasoned that the FSGB's Policies and Procedures ("P&P") allowed parties to conduct discovery at the outset of a grievance appeal. (Disc. Order at

105.)[3] Petitioner, however, requested discovery only after the Department submitted its response to her Grievance Appeal. (*Id.* at 102.) An examination of the Record of Proceedings ("ROP") reveals no authority suggesting that Petitioner was entitled to discovery before submitting her rebuttal.[4] Accordingly, the Board's conclusion that Petitioner failed to provide any statutory or regulatory basis to support her request was not arbitrary and capricious, an abuse of discretion, or contrary to law.

The FSGB's finding that the information sought by Petitioner was not relevant to her grievance also withstands judicial scrutiny. Petitioner requested discovery about the period of time that Foreign Service members on interim relief work in Washington. (*Id.* at 104.) The FSGB concluded that this information was not relevant to her claim of entitlement to per diem, because her grievance depended on whether she should have been assigned to Washington on temporary duty ("TDY") after she was scheduled for separation. (*Id.* at 106.) The length of time other employees on interim relief spent in Washington, the Board explained, had no bearing on whether Petitioner herself should have been on TDY. (*Id.*)

The FSGB's decision "articulates a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *See CBS Corp.*, 663 F.3d at 137. According to Department regulations, the length of a Foreign Service member's assignment

---

[3] It appears that the FSGB's Policies and Procedures ("P&P") have been revised as recently as January 16, 2020. *See* FSGB P&P (2020), https://www.fsgb.gov/fsgb_public?id=policies_procedures. The Court relies on the language of the P&P provided by the parties at the time of Petitioner's Grievance Appeal.

[4] In her Request for Discovery, Petitioner cited a P&P provision that allows a grievant to take additional discovery "where the agency has not earlier reached a final decision in the agency-level grievance." (Req. to Conduct Disc. at 88, Resp't's Ex. 7, ECF No. 14-7.) Petitioner asked that the Board "exercis[e] its discretion" to authorize her additional discovery. (Reply to Dep't's Opp'n to Req. to Conduct Disc. at 95–96, Resp't's Ex. 9, ECF No. 14-9.)

7

is a factor to consider when determining whether a member is on TDY or permanent assignment. *See* 14 Foreign Affairs Manual ("FAM") 575.2 (2018). However, Petitioner did not seek information that may have impacted whether she should have been on TDY, such as correspondence between supervisors about the length of her post. Rather, she requested only general information about the length of time that other Foreign Service members work in Washington while on interim relief. (Disc. Order at 104.) The Board's conclusion that Petitioner's request was not relevant to her Grievance Appeal does not "run counter" to the evidence presented. *See State Farm*, 463 U.S. at 43. Thus, the FSGB's action was not arbitrary and capricious, an abuse of discretion, or contrary to law. Summary judgment in favor of Respondent is therefore appropriate on this issue.

### III. The FSGB's Final Decision

Petitioner also requests that the Court reverse the FSGB's Final Decision holding that she was not on TDY and was not entitled to per diem. (Pet'r's Br. at 9–18, ECF No. 19.)[5] Petitioner challenges the Final Decision as "arbitrary and capricious, an abuse of discretion, and not in accordance with law." (Pet. ¶¶ 35–36.) Specifically, Petitioner argues that (1) the Board erred when it held that an employee "might be on neither a [temporary] detail nor a permanent assignment," (*see* Pet'r's Br. at 6), and (2) the Board erred in its factual determination that she was not, in effect, on TDY (*see id.* at 9–18). Petitioner asks that the Court (1) "hold that Foreign Service members are assigned a duty station through the course of their employment, whether as

---

[5] Under Department regulations, "[p]er diem is payable only when an employee is away from his or her permanent duty station." 14 Foreign Service Manual ("FAM") 574.1 (2018). Because TDY is one example of being "away from his or her permanent duty station," per diem is available when an employee is on TDY. *See* 14 FAM 575 (2018). Thus, the issue of whether Petitioner was on TDY is essential to the question of whether she is entitled to per diem.

8

a permanent assignment or a temporary detail," (2) make a factual finding that she was on TDY when she was directed to work in Washington, and (3) award her per diem. (*Id.* at 19.)[6] Respondent argues that summary judgment in favor of Respondent is appropriate because the FSGB's Final Decision satisfies the applicable APA standard of review. (*See* Resp't's Br. at 7–8.) The Court agrees with Respondent and affirms the FSGB. Each of the Board's findings and conclusions is addressed in turn below.

      A.      *Termination of Petitioner's Assignment at Embassy Malabo*

The FSGB held that Petitioner was precluded from relitigating whether her Embassy Malabo assignment continued when the Department directed her to work in Washington. (Final Decision at 226–27.) The Board applied the test for administrative collateral estoppel and determined that the doctrine precluded further litigation on the issue. (*Id.*) The FSGB's conclusion was not arbitrary and capricious, an abuse of discretion, or contrary to law. The Board applied the appropriate four-part test and explained why Petitioner met each part, pointing to several court cases and agency appeals in which Petitioner admitted, and the presiding body agreed, that her "assignment in Africa was broken and she was returned to Washington on 'Separation Orders' with no assignment." (*Id.* at 225.)

Separately, the FSGB concluded on the merits that Petitioner was not assigned when she returned to Washington because her assignment to Embassy Malabo had been terminated. (*Id.* at 227.) This conclusion also was not arbitrary and capricious, an abuse of discretion, or contrary to

---

[6] In her Petition for Review, Petitioner asks that the Court reverse the FSGB's Final Decision, find that she was on TDY, and grant her per diem. (Pet. at 4, ECF No. 1.) In her Motion for Summary Judgment, Petitioner also asks that the Court "hold that Foreign Service members are assigned a duty station through the course of their employment, whether as a permanent assignment or a temporary detail." (Pet'r's Br. at 6, ECF No. 19.)

law. The Board stated that when Petitioner left Embassy Malabo, she was due to be separated from the Foreign Service. (*Id.*) The Board explained that Petitioner could not perform her Embassy Malabo duties while in Washington, and noted that the Embassy had taken steps to fill her position prior to her departure. (*Id.*) This explanation articulates a rational connection between the facts found and the Board's conclusion. *See CBS Corp.*, 633 F.3d at 137.

      B.      *Interpretation of 14 FAM 575.1(a)*

Petitioner asks the Court to revisit the FSGB's interpretation of 14 FAM 575.1(a) and "hold that Foreign Services members are assigned a duty station through the course of their employment, whether as a permanent assignment or a temporary detail." (Pet'r's Br. at 19.) 14 FAM 575.1(a) defines TDY as

> a period of consultation, orientation, training, promotion panel service, other temporary detail, or any combination thereof, authorized in a travel order and performed while detailed to a location rather than assigned there.

14 FAM 575.1(a) (2018). In her Grievance Appeal, Petitioner argued that she must be categorized as either on permanent assignment or on "temporary detail," and thus within the definition of TDY. (*See* Final Decision at 228.) The Board rejected her argument, finding that "it has been decided repeatedly that at least another alternative status existed . . . a return to Washington, D.C. on 'Separation Orders.'" (*Id.*) The Board stated that the 14 FAM 575.1(a) although "inelegant[]" in its phrasing, does not preclude "[t]he reality that an employee might be on neither a detail nor a permanent assignment." (*Id.* at n.19.)

An agency's interpretation of its own regulations is afforded deference unless that interpretation is "plainly erroneous or inconsistent with the regulation." *N.J. Env't Fed'n*, 645 F.3d at 228. Nothing in the Board's interpretation of the regulation meets that threshold. *See id.* Rather, the Board's interpretation is rational, accordant with the plain language of the provision,

and consistent with past FSGB decisions. Thus, the Court defers to the Board's interpretation of 14 FAM 575.1(a) and declines to hold that a Foreign Service member must be either on a temporary detail or a permanent assignment.

### C. *Petitioner's TDY Status*

Petitioner also challenges the FSGB's factual finding that she was not on TDY. (Pet'r's Br. at 9–18.) She urges the Court to consider the nature and character of her duties and hold that she was, in effect, on TDY. (*Id.*) The FSGB found that Petitioner was not on TDY because she presented "no evidence," such as "any notice or a travel order," to support her claim that she was detailed to Washington temporarily. (Final Decision at 229.) Rather, the Board found that the record showed that Petitioner returned to Washington on Separation Orders. (*Id.*)

The FSGB's conclusion withstands judicial review. The Court notes that it is not empowered to make findings of fact and its review is limited to the ROP. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973). A close analysis of the ROP does not yield any evidence showing that Petitioner was temporarily detailed to Washington. Rather, the ROP contains "substantial evidence" demonstrating that Petitioner was in Washington on Separation Orders with no assignment. *See Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000) ("[a] decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision"). Here, such substantial evidence includes Petitioner's Separation Order itself (Separation Order at 17–19, Resp't's Ex. 2), her CDO's statement that she was not assigned to Washington (Pet'r's SUMF ¶ 5), and SOP D-01, which specified that employees on interim relief would not receive "any of the benefits or allowances associated with either [TDY] or a permanent assignment" (SOP D-01 (Revised Mar. 2014) at 27). The Board's conclusion, therefore, was not arbitrary and capricious, an abuse of discretion, or contrary to law.

D.    *Petitioner's Entitlement to Per Diem*

The FSGB found that Petitioner provided no applicable regulatory authority to support her position that she was entitled to per diem. (Final Decision at 230.) In her Grievance Appeal, Petitioner cited 14 FAM 571.2(b) and 14 FAM 511.1-1 as the regulatory bases for her claim to per diem. (*See* Grievance Appeal Submission at 5–3.) 14 FAM 571.2(b) (2018) provides that "[p]er diem in lieu of subsistence is payable when a traveler is away from a post on official business." The Board found that 14 FAM 571.2(b) did not apply to Petitioner because she was not away from Embassy Malabo and was not "expecting to return there or to any other permanent assignment." (Final Decision at 230.) 14 FAM 511.1-1 (2012) provides for travel and related expenses incurred for "proceeding to and returning from assigned posts of duty." The Board found that 14 FAM 511.1-1 did not apply to Petitioner because she offered "no evidence that she was returning from *and* proceeding to posts of duty. She was leaving one assignment and proceeding to no assignment." (Final Decision at 230.)

The FSGB's explanation regarding the applicability of these provisions evinces "a rational connection between the facts found and the choice made." *CBS Corp.*, 663 F.3d at 137. The Board considered Petitioner's arguments, applied the facts to the cited regulations, and provided a reasoned explanation regarding its assessment that the cited provisions did not apply. (*See* Final Decision at 230–01.) Therefore, the Board's finding that Petitioner was not entitled to per diem was not arbitrary and capricious, an abuse of discretion, or contrary to law.

E.    *Validity of SOP D-01*

Finally, the FSGB found that administrative collateral estoppel prevented Petitioner from relitigating whether SOP D-01 was a valid expression of the Secretary of State's power. (*Id.* at 232.) Petitioner argued in her Grievance Appeal, and raises the argument again in her Motion for

12

Summary Judgment, that SOP D-01 is invalid because it conflicts with a federal statute. (*See* Grievance Appeal Submission at 7–8; Pet'r's Br. at 12.)

The Board's conclusion that Petitioner was estopped from reasserting this argument was not arbitrary and capricious, an abuse of discretion, or contrary to law. The Board cited numerous previous orders in which it held that SOP D-01 was a lawful exercise of power and an appropriate use of the Secretary of State's discretionary authority. (*See* Final Decision at 231.) The FSGB applied the appropriate four-part test for administrative collateral estoppel and concluded that the doctrine applied. (*See id.* at 232–33.) Although the Board's analysis does not examine each of the four elements in detail, "the agency's path may be reasonably discerned," *see State Farm*, 463 U.S. at 43. Therefore, the Court will uphold the Board's conclusion.

In the final analysis, the Court concludes that the FSGB did not act arbitrarily and capriciously, did not abuse its discretion, and did not act contrary to law. Therefore, the Court finds that summary judgment in favor of Respondent is warranted.

## CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment (ECF No. 12) is granted, and Petitioner's Motion for Summary Judgment (ECF No. 18) is denied. The FSGB's Final Decision is affirmed. An appropriate Order will follow.

Date: January 22, 2020               */s/ Anne E. Thompson*
                                     ANNE E. THOMPSON, U.S.D.J.